**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **TYLER FITZGERALD RAYBON-TATE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:14-cv-00100** |
| | ) | **Judge Haynes / Knowles** |
| **AVRIL CHAPMAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Defendant's Motion for Summary Judgment.

Docket No. 111. Along with that Motion, Defendant has contemporaneously filed a supporting

Memorandum of Law (Docket No. 112), a Statement of Undisputed Material Facts (Docket No.

117), and the Declarations of Avril Chapman (Docket No. 113), Benjamin Killingsworth (Docket

No. 114), Hank Inman (Docket No. 115), and Jessica McElroy (Docket No. 116).

Plaintiff has filed one notarized document entitled "Response to Defendant's: Motions

for, 1.) Summary Judgment Request, 2.) Memorandum in Support of Defendant's Motion for

Summary Judgment, 3.) Defendant's Statement of Undisputed Material Facts." Docket No. 120.[1]

Defendant has filed a Reply (Docket No. 124), to which Plaintiff has filed a SurReply

(Docket No. 128).

---

[1] On February 26, 2016, a few months after Plaintiff filed this "Response," Plaintiff filed what appears to be a duplicate copy of this document. *Compare* Docket No. 120 *with* Docket No. 150. On May 31, 2016, Plaintiff filed a third copy of this document. *Compare* Docket No. 120 *with* Docket Nos. 150, 152.

Plaintiff, an inmate of the Tennessee Department of Correction ("TDOC"), who at all times relevant to the instant action was housed at South Central Correctional Facility ("SCCF") but who is now housed at Riverbend Maximum Security Institution ("RMSI"), filed his pro se, in forma pauperis, Verified Complaint pursuant to 42 U.S.C. § 1983, essentially alleging that Defendant violated his Eighth Amendment rights by housing him in the general population. Docket No. 1.[2] Specifically, Plaintiff argues that Defendant should have housed him in protective custody until he could be transferred to a different TDOC facility where he would be safe, because there were threats against his life from other inmates housed in the general population at that facility. *Id.* Plaintiff avers that he communicated the gravity of his "situation" to numerous Officers and requested to speak with Defendant directly, but to no avail. *Id.* Plaintiff further avers that he was repeatedly intimidated, assaulted, and injured by the inmates who had threatened his life, and that despite the known danger to his life, Defendant housed him in general population. *Id.*

Plaintiff additionally avers that SCCF Officers:[3] (1) repeatedly would not take him to "medical," but eventually did take him to "medical," where they treated and photographed some of his injuries; (2) repeatedly refused to help him or move him to safety; (3) stripped him naked and placed him in a suicide watch cell after he said that he was suicidal in order to get moved from general population; (4) temporarily moved him to Charles Bass Correctional Complex

[2] At all times relevant to the instant action, Plaintiff was an inmate at South Central Correctional Facility ("SCCF"), where Defendant was the acting Warden. *See* Docket Nos. 1, 113.

[3] The sole Defendant in this action is SCCF Warden Arvil Chapman. *See* Docket No. 1. Plaintiff does not sue any other SCCF Officers. *Id.*

("CBCX"), but eventually moved him back to SCCF; (5) gave him a disciplinary write-up for "refusing cell assignment"; (6) put him in solitary confinement; (7) denied him access to the telephone to call his attorney; (8) allowed him only partial time to video conference his attorney; and (9) "sit rite [*sic*] behind" him listening to his conversations with his attorney. *Id.*

Plaintiff does not state the capacity in which he sues Defendant; accordingly, Plaintiff is deemed to sue Defendant in his official capacity as SCCF Warden. *Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989). Plaintiff's Verified Complaint does not set forth the relief sought. *Id.*

Defendant filed the instant Motion for Summary Judgment and supporting materials arguing that his Motion for Summary Judgment should be granted because: (1) Plaintiff has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a); (2) Defendant did not violate Plaintiff's Eighth Amendment Rights because his sole involvement was reviewing and evaluating Plaintiff's two protective custody investigations, and Plaintiff cannot establish that Defendant acted with deliberate indifference therein; and (3) *respondeat superior* is not a basis for the imposition of liability under § 1983, and Defendant did not encourage or directly participate in the allegedly violative conduct of the other SCCF Officers. Docket Nos. 111-17, 124.

Plaintiff has filed one notarized document entitled "Response to Defendant's: Motions for, 1.) Summary Judgment Request, 2.) Memorandum in Support of Defendant's Motion for Summary Judgment, 3.) Defendant's Statement of Undisputed Material Facts." Docket No. 120.[4] In his Response, Plaintiff argues that Defendant's Motion should be "DENIED as MOOT in view

---

[4] As has been noted, Plaintiff filed what appears to be a second copy of this document on February 26, 2016, and a third copy of this document on May 31, 2016. *Compare* Docket No. 120 *with* Docket Nos. 150, 152.

of Document #20 page 41 of 43 page I.D. #101 lines #12-15." *Id.*[5] As relates to Defendant

specifically, Plaintiff asserts:

> . . . when it comes to the Defendant Mr. Arvil Chapman and his
> attorney claiming that I never filed the proper grievance so this
> 1983 complaint should be dismissed. That is very false and is
> basically South Central once again trying to manipulate and beat
> the system. And only boils down to my word against theirs. And
> when it comes to the Defendant claiming that we never had any
> face to face interaction or he is not responsible for anything
> concerning my claim because he only acted out of good faith. Is
> totally false. I sent Mr. Arvil Chapmans multiple inmate request,
> and I also filed multiple inmate grievances concerning my need for
> protective custody. And got no response. Not because I never sent
> them in period or filed them properly. But because the staff at
> S.C.C.F. didn't want to respond and leave a paper trail. . . . I would
> like to point out that I have spoken with Mr. Arvil Chapman before
> face to face. When he did a walk threw, threw South Centrals
> Segregation Unit. When I was requesting Protective Custody.
> And he made me aware that this is prison and I needed to quit
> refusing cell assignment, and take my ass to the compound again
> and take my ass woopin like a man. . . . Judge Haynes ordered that
> a copy of that transcript from the hearing held on 10-31-14. Be sent
> to the T.D.O.C. Commissioner Mr. Derrick Schofield and the
> Defendant Mr. Arvil Chapman. And even after that transcript was
> sent to them both. I was once again assaulted by that Inmate Mr.
> Elbert Gleaves #521243, In an holding cell at Davidson County
> Criminal Court. . . . But if the defendant Mr. Arvil Chapman or the
> T.D.O.C. Commissioner Mr. Derrick Schofield would've properly.
> Filed the incompatible on me and the Inmate Elbert Gleaves after I
> made South Central aware of the first assault in June 2014, or
> when Judge Haynes sent them a certified copy of the transcript
> November, 2014, I would've never been assaulted on January, 22,
> 2015. . . . I'm asking for the Courts to please give me the chance to
> continue this complaint in court. Even by me and the defendant
> having a few more status conference until we come up with an

---

[5] "Document #20 page 41 of 43 page I.D. #101 lines #12-15" references the hearing
transcript from Judge Haynes' October 31, 2014 hearing, wherein Judge Haynes states: "Well,
this is the second, perhaps third case, that the Court has had concerning gang activities at South
Central where inmates are paying other inmates for personal protection." Docket No. 20, p. 41:
12-15.

Agreement or settlement, or even scheduling us a trial date in the
very near future.

*Id.*

Defendant has filed a Reply, arguing that Plaintiff's Response fails to properly contest
any of his undisputed material facts as mandated by the Federal Rules of Civil Procedure and by
the Local Rules of Court, such that the Court should find that there are no genuine issues as to
any of those material facts.  Docket No. 124.  Defendant contends that Plaintiff's Response fails
to contain the requisite specific citations to the record, and that Plaintiff's Response "simply
offers vague, conclusory statements" which are insufficient to overcome a Motion for Summary
Judgment.  *Id.*  With regard to Plaintiff's assertions about his classification and housing
arrangements at RMSI, Defendant contends that those allegations are not relevant to Plaintiff's
allegations against Defendant, as Defendant is the Warden at SCCF.  *Id.*  Finally, Defendant
argues that the remainder of Plaintiff's conclusory allegations concerning the unspecified actions
of unnamed SCCF inmates and employees and his inability to obtain and present "evidence"
against them are likewise irrelevant to the allegations against Defendant.  *Id.*  Defendant
summarizes: "By merely asserting conclusory statements and reciting the allegations stated in his
Complaint, Plaintiff has not contested any of Defendant's undisputed material facts"; and has
therefore "failed to establish that he exhausted his administrative remedies and/or that Defendant
Chapman acted with deliberate indifference or deprived him of any constitutional rights."  *Id.*

Plaintiff has filed a SurReply, which asks this Court to allow his case to proceed but
which does not address the points raised by Defendant in his Reply, nor does it address the
allegations against Defendant.  Docket No. 128.  Instead, Plaintiff argues that he is housed at

RMSI, where he is "locked in the cell at least 20-22 hours a day." *Id.* He contends that at RMSI, he has no access to the law library or legal phone privileges, such that he needs an attorney to be appointed to represent him in this action, and he further contends that at RMSI, he is kept from attending visitation and from writing to his family. *Id.* He argues that TDOC is conspiring against his life, and that the conspiracy began at SCCF. *Id.* He states, "I'm 100% positive the court would not have let me get this far if the courts didn't believe I had a good case," "so I'm begging the courts to give me a jury trial. To prove to the Jury that T.D.O.C., and C.C.A. South Central, and Mr. Arvil Chapman did knowingly violate my prisoner civil rights." *Id.*

For the reasons set forth below, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. The undersigned therefore recommends that Defendant's Motion for Summary Judgment (Docket No. 111) be GRANTED.

## II. Undisputed Facts[6]

### A. Allegations Specifically Relating to Defendant in Plaintiff's Verified Complaint

On June 17, 2014, upon his arrival at SCCF, Plaintiff requested to speak with Defendant concerning a "safety emergency" about his life, but was denied and told that Defendant was unavailable. Docket No. 1, p. 5. Plaintiff wrote Defendant, STG Coordinators, and Internal Affairs "multiple times and explained to them [his] situation" and that he was in fear of "losing [his] life." *Id.*, p. 10. After Defendant tried to "force" Plaintiff to stay in general population, Plaintiff refused to leave his cell and received a disciplinary write-up for "refusing cell

---

[6] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

assignment." *Id.*

## B. Declaration of Arvil Chapman

At all times relevant to the instant action, Arvil Chapman was the Warden at SCCF, a Corrections Corporation of American ("CCA") facility. Docket No. 113, Declaration of Arvil Chapman ("Def. Dec."), ¶ 2.

In July 2014, Defendant received and reviewed the protective services panel's recommendation regarding Plaintiff's first request for protective custody. *Id.*, ¶ 3. Such review is pursuant to TDOC policies and procedures. *Id.* According to the related documentation, Plaintiff claimed that he had been involved in a physical altercation with "multiple blood gang members" because he had an argument with them concerning an assault on an inmate being housed in another prison facility. *Id.*, ¶ 4. Based upon Defendant's review of the panel's recommendation, Plaintiff's request, the investigative report, and Plaintiff's prior medical history, and based upon Defendant's training and experience, Defendant held a good faith belief that Plaintiff would not face a substantial risk of serious harm in the general population, so Defendant authorized his release into general population. *Id.*, ¶ 5. Defendant's determination to authorize Plaintiff's release into general population was approved by the Designee of the TDOC Commissioner. *Id.*, ¶ 6.

In October 2014, Defendant received and reviewed the protective services panel's recommendation regarding Plaintiff's second request for protective custody. *Id.*, ¶ 7. Such review is pursuant to TDOC policies and procedures. *Id.* According to the related reports, Plaintiff claimed that he had been involved in multiple physical altercations with blood gang members because he had killed a blood gang member that he alleged had raped his niece. *Id.*, ¶

8.  After reviewing the panel's recommendation, Plaintiff's request, the investigative report, and Plaintiff's prior medical history, Defendant found no actual evidence to support his allegations of assault or of forced payment.  *Id.*, ¶ 9.  Specifically, if Plaintiff had actually been assaulted by the number of gang members that he alleged and in the manner that he alleged, based upon Defendant's training and experience, Defendant believes that Plaintiff would have sustained more extensive injuries than he presented with at that time.  *Id.*  Because it appeared that Plaintiff was involved in inappropriate activities, however, Defendant approved the panel's recommendation for protective custody and transfer to another facility.  *Id.*  Defendant's determination to approve the panel's recommendation was approved by the Designee of the TDOC Commissioner.  *Id.*

Plaintiff is a confirmed member of the blood gang.  *Id.*, ¶ 10.  At all times relevant to this matter, Plaintiff had no known incompatibles at SCCF.  *Id.*, ¶ 11.

Defendant has had no other involvement with Plaintiff related to his claims in this matter, and Plaintiff never gave Defendant any additional information regarding the inmates who were allegedly assaulting him.  *Id.*, ¶ 12.  At all times relevant to this matter, Defendant acted in good faith as a reasonable and prudent Warden.  *Id.*, ¶ 13.  At no time did Defendant act with deliberate indifference to Plaintiff's claims, facts of the investigation, or allegations.  *Id.*

## C.  Declaration of Benjamin Killingsworth

At all times relevant to the instant matter, Benjamin Killingsworth was a Unit Manager at SCCF.  Docket No. 114, Declaration of Benjamin Killingsworth ("Killingsworth Dec."), ¶ 2.

Plaintiff arrived at SCCF on June 17, 2014, and is a confirmed member of the blood gang.  *Id.*, ¶¶ 5, 6.

On June 19, 2014, Plaintiff was place on protective custody investigation after he claimed that he had been involved in physical altercations with multiple blood gang members because of an argument with other blood gang members over the assault of an inmate named Joshua Carter. *Id.*, ¶ 3. That same month, UM Killingsworth conducted a protective custody investigation into the possible threat of Plaintiff being assigned to general population. *Id.*, ¶ 4. Plaintiff did not provide any real names of the inmates who were allegedly involved in any of the physical altercations with him at that time. *Id.*, ¶ 7. UM Killingsworth conducted interviews of multiple blood gang members in relation to Plaintiff, but none of the inmates confirmed Plaintiff's claims. *Id.*, ¶ 8. UM Killingsworth also searched the Tennessee Offender Management Information System ("TOMIS"), a computerized database for TDOC, for any facts related to the allegations made by Plaintiff. *Id.*, ¶ 9. UM Killingsworth did find an inmate named Joshua Carter, who was then-currently on protective custody at Morgan County Correctional Complex ("MCCX"), but did not find any information on TOMIS relating Plaintiff to Joshua Carter in any way. *Id.*

According to TOMIS, Plaintiff had no incompatibles at SCCF at that time. *Id.*, ¶ 10. UM Killingsworth's investigation also indicated that there did not appear to be any suspicious trust fund transactions in Plaintiff's account. *Id.*, ¶ 11.

Upon completing his investigation, based upon his training and education, UM Killingsworth ultimately could not find any evidence suggesting that Plaintiff was in danger. *Id.*, ¶ 12.

**D. Declaration of Hank Inman**

At all times relevant to the case at bar, Hank Inman was the Security Threat Group ("STG") Coordinator at SCCF. Docket No. 115, Declaration of Hank Inman ("Inman Dec."), ¶

2.

Plaintiff arrived at SCCF on June 17, 2014, and is a confirmed member of the blood gang. *Id.*, ¶¶ 5, 6.

Plaintiff was placed on protective custody investigation on October 3, 2014, after he claimed that he had been forced to pay other blood and vice lord gang members and that he had been involved in multiple physical altercations because he had allegedly killed a blood gang member after that individual raped his niece. *Id.*, ¶ 3. That same month, STG Coordinator Inman conducted a protective custody investigation into the possible threat of Plaintiff being assigned to general population. *Id.*, ¶ 4. At the time of STG Coordinator Inman's investigation, Plaintiff refused to identify any of the inmates who were allegedly involved in any of the physical altercations with him at that time. *Id.*, ¶ 7. STG Coordinator Inman conducted interviews of multiple inmates, as well as staff members, in relation to Plaintiff, but none of the individuals verified Plaintiff's allegations. *Id.*, ¶ 8. STG Coordinator Inman also searched TOMIS for any facts related to Plaintiff's allegations, and, according to TOMIS, Plaintiff had no incompatibles at SCCF at that time. *Id.*, ¶ 9.

Based upon Plaintiff's records, STG Coordinator Inman found that Plaintiff did present to medical with injuries consistent with being involved in some type of physical altercation on or about September 26, 2014, after coming out of the Columbia Building at SCCF. *Id.*, ¶ 10. At that time, Plaintiff was assigned to the Apollo Building at SCCF, and thus, he should not have been in the Columbia building. *Id.* During a monitored telephone call, however, Plaintiff discussed various STG issues related to his blood gang affiliation and commented on his attendance of a STG-related meeting at SCCF on September 26, 2014, the day of his alleged

altercation. *Id.*

STG Coordinator Inman's investigation indicated that there did not appear to be any suspicious trust fund transactions in Plaintiff's account. *Id.*, ¶ 11.

After completing his full investigation, STG Coordinator Inman, based upon his training and experience, found no evidence to verify Plaintiff's claims concerning his alleged forced payments to gang members. *Id.*, ¶ 12.

## E. Declaration of Jessica McElroy

At all times relevant to this action, Jessica McElroy was employed by CCA as the Grievance Chairperson at SCCF. Docket No. 116, Declaration of Jessica McElroy ("McElroy Dec."), ¶ 2.

Grievance Chairperson McElroy is familiar with all applicable TDOC requirements and policies governing an inmate's use of the grievance system. *Id.*, ¶ 3. SCCF follows the TDOC Policy that allows inmates to submit a written complaint/grievance concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within SCCF, which personally affects the inmates. *Id.*, ¶ 4.

Upon arrival at SCCF, each inmate is given an inmate handbook, which contains the grievance procedure. *Id.*, ¶ 5. Pursuant to TDOC policies and procedures, an inmate has exhausted his administrative remedies when the inmate has filed an appropriate and proper grievance and appealed the response all the way through the TDOC Commissioner's Office. *Id.*, ¶ 6.

SCCF maintains records of all inmate grievances properly filed and those inmate

grievances are recorded in TOMIS. *Id.*, ¶ 7. When an inmate submits a grievance that does not follow grievance policies and procedures, however, that grievance is returned to the inmate with an explanation as to its deficiencies. *Id.*

Grievance Chairperson McElroy has reviewed TOMIS to determine what grievances Plaintiff filed. *Id.*, ¶ 8. Based on her review of the grievance database, Plaintiff did not file any proper grievances pertaining to the facts alleged in his Complaint. *Id.*, ¶ 9.

Plaintiff did, however, attempt to file grievances in July 2014. *Id.*, ¶ 10. Grievances are submitted on carbon copy paper, consisting of the original and two copies. *Id.*, ¶ 11. Plaintiff's July grievances that were submitted were not legible on all copies and did not contain enough information to be processed. *Id.* Those grievances were therefore not processed and were returned to Plaintiff for revision and resubmission if desired. *Id.*

After receiving the returned, deficient grievances, Plaintiff had the ability to appeal the determination that the grievances were not legible on all copies and/or appeal the determination that the grievances lacked sufficient information to be processed. *Id.*, ¶ 12. Plaintiff was not deterred from revising and resubmitting the July grievances and/or appealing the determinations related to the sufficiency of those grievances in any way. *Id.*, ¶ 13.

If Plaintiff would have properly revised and resubmitted the grievances, the grievances would have been recorded on TOMIS. *Id.*, ¶ 14. Likewise, if Plaintiff would have appealed the determination concerning the deficiency of the grievances, his appeal would have been recorded on TOMIS. *Id.*, ¶ 15.

Based on Grievance Chairperson McElroy's review of Tomis, Plaintiff neither revised and/or resubmitted his grievances, nor did he appeal any determination related to those

grievances.  *Id.*, ¶¶ 16, 17.

### III.  Analysis

### A.  Local Rules 56.01(g) and Fed. R. Civ. P. 56(c)

With respect to Motions for Summary Judgment specifically, Local Rules 56.01(g) states, in pertinent part:

> g.  Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Additionally, Fed. R. Civ. P. 56(c)(1)(A) provides:  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."

Although Plaintiff has filed a Response that purports to be a Response to Defendant's Motion, supporting Memorandum of Law, and Statement of Undisputed Facts, Plaintiff's Response neither responds to the facts set forth in Defendant's Statement of Undisputed Facts, nor contains the requisite citations to the record.  Plaintiff has, therefore, failed to properly respond to Defendants' Statement of Undisputed Material Facts.  Pursuant to Local Rule 56.01(g), Plaintiff's failure to properly respond indicates "that the asserted facts are not disputed for the purposes of summary judgment."  Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

**B. Summary Judgment Standards**

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to properly respond to his Statement of Undisputed Material Facts. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met his burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v.*

*Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C.  42 U.S.C. § 1983

### 1.  Generally

With respect to Defendant specifically, Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S.

42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct.

1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,*

474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,*

436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).  The traditional definition of

acting under color of state law requires that the defendant in a § 1983 action have exercised

power "possessed by virtue of state law and made possible only because the wrongdoer is clothed

with the authority of state law."  *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313

U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### 2.  Eighth Amendment

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed,
> nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel

and unusual punishments" forbids punishments that are incompatible with "the evolving

standards of decency that mark the progress of a maturing society," or which "involve the

unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct.

285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong

test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for

the deprivation must have exhibited deliberate indifference to the inmate's health or safety.

*Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

## D.  Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law.  42 U.S.C. §1997e(a).  *See also, e.g., White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999).  The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a)  **Applicability of Administrative Remedies**.  No action shall be brought with  respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of § 1997e(a).  Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999).  In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants], he was required to continue to the next step in the grievance process . . . . We have previously held that an inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies. . .

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether Plaintiff's claims have been

brought with respect to "prison conditions" as that term is used in 42 U.S.C. § 1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U.S.C. § 1997e(a) in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999). In *Freeman*, Plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court had dismissed his complaint for failure to exhaust administrative remedies. On appeal, Plaintiff argued in part that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of § 1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not defined in § 1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. . . .
>
> Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

196 F.3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 986 (2002). As the *Porter* Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.
>
> . . .
>
> For the reasons stated, we hold that the PLRAs exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

122 S.Ct. at 988, 992 (citations omitted, emphasis added).

## E.  The Case at Bar

As an initial matter, under the reasoning of *Porter* and *Freeman*, Plaintiff's claims in the case at bar fall within the meaning of the term "prison conditions" as used in §1997e(a). He is, therefore, required to exhaust his administrative remedies as set forth in the PLRA.

The following is undisputed. SCCF follows the TDOC Policy that allows inmates to submit a written complaint/grievance concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within SCCF, which personally affects the inmates, and that upon arrival at SCCF, each inmate is given an inmate handbook, which contains the grievance

procedure.  McElroy Dec., ¶¶ 4, 5.

Pursuant to TDOC policies and procedures, an inmate has exhausted his administrative remedies when the inmate has filed an appropriate and proper grievance and appealed the response all the way through the TDOC Commissioner's Office, that SCCF maintains records of all inmate grievances properly filed, and that those inmate grievances are recorded in TOMIS. *Id.*, ¶¶ 6,7.

Plaintiff attempted to file grievances in July 2014, but that those grievances were not legible on all copies, did not contain enough information to be processed, were therefore not processed, and were returned to Plaintiff for revision and resubmission if desired. *Id.*, ¶¶ 10,11. After receiving the returned, deficient grievances, Plaintiff had the ability to appeal the determination that the grievances were not legible on all copies and/or appeal the determination that the grievances lacked sufficient information to be processed. *Id.*, ¶ 12.  Plaintiff was not deterred from revising and resubmitting the July grievances and/or appealing the determinations related to the sufficiency of those grievances in any way. *Id.*, ¶ 13.

If Plaintiff would have properly revised and resubmitted the grievances, the grievances would have been recorded on TOMIS. *Id.*, ¶ 14.  Likewise, if Plaintiff would have appealed the determination concerning the deficiency of the grievances, his appeal would have been recorded on TOMIS. *Id.*, ¶ 15.  Plaintiff neither revised and/or resubmitted his grievances, nor did he appeal any determination related to those grievances. *Id.*, ¶¶ 16, 17.

Because Plaintiff neither revised nor resubmitted his grievances, nor did he appeal any determination related to those grievances, and because TDOC policies and procedures designate that an inmate has exhausted his administrative remedies only when the inmate has filed an

appropriate and proper grievance *and* appealed the response all the way through the TDOC Commissioner's Office, Plaintiff in the case at bar has failed to exhaust his administrative remedies.

## IV.  Conclusion

For the foregoing reasons, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies as required by the PLRA.  The undersigned therefore recommends that Defendants' Motion for Summary Judgment (Docket No. 111) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


_____
E. CLIFTON KNOWLES
United States Magistrate Judge